**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| THE COMMITTEE FOR MASSACHUSETTS VOTER IDENTIFICATION BALLOT QUESTION, <br><br> Plaintiff, <br><br> v. <br><br> HON. WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts, <br><br> Defendant. | Civil Action No.: 1:24-cv-12029-NMG |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff The Committee for Massachusetts Voter Identification Ballot Question ("Committee") moves for summary judgment on its one-count Complaint under Rule 56 of the Federal Rules of Civil Procedure. Compl. ¶¶ 25-28, ECF No. 1. There are no issues of material fact genuinely in dispute and the Committee is entitled to judgment as a matter of law.

## I.     BACKGROUND

Plaintiff is a political committee registered with the Massachusetts Office of Campaign and Political Finance (CPF ID 95517). Its purpose is to promote the integrity of elections by supporting a Voter ID ballot question in the Commonwealth of Massachusetts ("Commonwealth"). It is comprised of grass roots activists who, among other activities, research and analyze public records to determine whether voter rolls are current, accurate, and comply with federal and state law.

Defendant is the Chief Election Official for the Commonwealth. In that capacity, Defendant maintains a statewide voter registration list using the Voter Registration Information System ("VRIS"). The VRIS is a "single, uniform, official, centralized, interactive computerized statewide voter registration list." Memorandum from M. Tassinari to U.S. Election Comm'n (April 22, 2005) at 1 ("Tassinari Memo") (true copy attached hereto as Exhibit 1). The VRIS "was designed to comply with the National Voter Registration Act of 1993 (also known as 'Motor Voter') and implementing state legislation (G.L. c. 51, section 47C) and regulations (950 C.M.R. § 58.00 *et seq[.]*)." *Id.*

The National Voter Registration Act of 1993 ("NVRA") includes a "Public Disclosure Provision" codified at 52 U.S.C. § 20507(i)(1). The Public Disclosure Provision requires that "each State … shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters … ." 52 U.S.C. § 20507(i)(1).

On December 3, 2023 Plaintiff's then President, Joanne Miksis, requested a copy of (1) the Massachusetts statewide voter registration list, and (2) copies of all Member Data files that the Commonwealth transmitted since January 1, 2023 to the Electronic Registration Information Center, Inc. ("ERIC") pursuant to the Membership Agreement between the Commonwealth and ERIC dated June 16, 2022 (collectively, the "Voter Records"). Compl., Ex. A, ECF No. 1-1.

On December 18, 2023 Defendant's office responded (1) that it would provide the requested list provided that Plaintiff first sign a "licensing agreement," and (2) that it had no responsive records with respect to the Member Data files. *Id.*, Ex. B, ECF No. 1-2. Plaintiff

tried multiple times to obtain the licensing agreement, but Defendant did not respond. *Id.*, Ex. C, ECF No. 1-3.

In a Notice Letter from Plaintiff dated April 2, 2024 that Defendant received on April 3, 2024, Plaintiff informed Defendant that its failure to provide the Voter Records was a violation of the Public Disclosure Provision of the NVRA. *Id.*, Ex. D, ECF No. 1-4. Defendant did not respond to the Notice Letter or cure its violation of the NVRA within ninety days of receipt of the Notice Letter, as the statute requires. 52 U.S.C. § 20510(b)(2).

Congress has determined that access to election records concerning list maintenance is to be made publicly available. Any state effort to block public access is void under the Supremacy Clause and the uniform weight of jurisprudence addressing this issue. Accordingly, Defendant's failure to provide the Voter Records violates the NVRA, and any condition placed on the provision of the Voter Records, through a license or otherwise, is preempted. Plaintiff is entitled to summary judgment and injunctive and declaratory relief.

## II.      **STATEMENT OF FACTS**

The discussion above provides context to this dispute. However, pursuant to D. Mass. Local Rule 56.1, Plaintiff provides the following statement of material facts as to which Plaintiff contends there is no genuine issue to be tried. As described below, Defendant cannot prevail on these facts as a matter of law.

1.      Plaintiff requested the Voter Records from Defendant on December 3, 2023. Compl., Ex. D at 3, ECF No. 1-4.

2.      Defendant conditioned the production of the Voter Records upon the prior execution of a licensing agreement. *Id.* at 4. Defendant did not provide the licensing agreement notwithstanding Plaintiff's multiple requests for that document. *Id.* at 5.

3.      Plaintiff sent Defendant a Notice Letter dated April 2, 2024 pursuant to 52 U.S.C. § 20510 alleging violation of the NVRA.  *Id.* at 1-18.

4.      Defendant received Plaintiff's Notice Letter on April 3, 2024.  Compl., Ex. E, ECF No. 1-5.  Defendant did not respond to the Notice Letter or, pursuant to 52 U.S.C. § 20510(b)(2), cure its violation of the NVRA within ninety days.

5.      Pursuant to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901-21145, Defendant "shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State … ."  52 U.S.C. § 21083.

6.      Pursuant to the requirements of the HAVA, Defendant maintains a single, uniform, official, centralized, interactive computerized statewide voter registration list in the VRIS.  G.L. ch. 51, § 47C; 950 CMR § 58.

7.      Defendant provides secure access to the VRIS to authorized users in each city and town in the Commonwealth to create, modify, and delete resident, family and voter data in the VRIS statewide database only as to their own community.  VRIS Resident/Voter Module, 6 (true copy attached hereto as Exhibit 2); Tassinari Memo, 1.

8.      To maintain the statewide voter registration list, Defendant is required to share voter registration data with ERIC as set forth in an agreement (contract) between Defendant and ERIC.  G.L. ch. 51, § 47C.  Defendant signed the contract with ERIC on June 15, 2022, which had an effective date of June 16, 2022.  Compl., Ex. D at 7-18, ECF No. 1-4.

9.        The Commonwealth is a member of ERIC:



[https://ericstates.org/about/](https://ericstates.org/about/) (last visited Nov. 25, 2024) (emphasis added).

10.      Pursuant to Defendant's contract with ERIC, the Commonwealth must send data to ERIC at least every sixty days.  The data comprise information related to the Commonwealth's voter files and motor vehicle records.  That information includes all inactive and active voter files (excluding those records that are confidential or protected from disclosure by law) and all licensing or identification records contained in the Commonwealth's motor vehicles database (excluding those fields unrelated to voter eligibility).  Compl., Ex. D at 7-8, ECF No. 1-4.

11.      Data sent to ERIC include at least the following: all name fields; all address fields; driver's license or state identification number; last four digits of Social Security number; date of birth; activity dates as defined by the ERIC Board of Directors; current record status; affirmative documentation of citizenship; the title/type of affirmative documentation of citizenship presented; phone number; e-mail address or other electronic contact method. *Id.* at 16.

III.    **LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese*, 499 F.3d 32, 38 (1st Cir. 2007).

"An issue is genuine if the evidence of record permits a rational factfinder to resolve it in favor of either party." *Borges ex. rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010) (internal quotation marks and citations omitted).  "A fact is material if its existence or nonexistence has the potential to change the outcome of the suit." *Id.* at 5.  The moving party bears the burden of showing the district court the basis for its motion and identifying where there exists a lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the summary judgment movant demonstrates the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue for trial.  *Borges*, 605 F.3d at 5 (citing *Celotex*, 477 U.S. at 324).

"If the nonmovant fails to make this showing, then summary judgment is appropriate." *Id.*  The Court must view the facts in the light most favorable to the non-moving party, drawing

all reasonable inferences in that party's favor. *Barbour v.Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995) (citing *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir. 1994)).

## IV.    ARGUMENT

### A.    Plaintiff Is Entitled To The Voter Records Per The NVRA

There is no question that Plaintiff is entitled to the Voter Records.  The Voter Records comprise a data extract, i.e., report, that the VRIS—the database through which Defendant performs voter list registration and maintenance activities—generates.  As such, Defendant must provide the Voter Records pursuant to the NVRA Public Disclosure Provision.  *Public Int. Legal Found., Inc. v. Bellows,* 92 F.4th 36, 47 (1st Cir. 2024).

Also included in the Voter Records are the Member Data files that Defendant is required to submit to ERIC at sixty day intervals.  As Defendant's contract with ERIC states, ERIC seeks to "improv[e] the accuracy of state voter registration data" and to "assist state and local government units in making their voter registration lists and processes more accurate, more complete, and fully compliant with federal, state and local laws."  Compl., Ex. D at 7, 10, ECF No. 1-4.

As the Public Disclosure Provision of the NVRA makes clear, "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," subject to narrow exceptions, are available for public inspection.  52 U.S.C. § 20507(i)(1) (emphasis added).  The Member Data files are such records.

#### 1.    Plaintiff Is Entitled To The Statewide Voter List

*Bellows* settled the question of whether Plaintiff is entitled to Defendant's statewide voter list.  In *Bellows*, the First Circuit spelled out in its analysis that such a list "plainly relates" to

"voter list registration and maintenance activities and is thereby subject to disclosure under Section 8(i)(1)."[1] *Bellows,* 92 F.4th at 47.

All other courts that have addressed this question have reached the same conclusion. *See, e.g., Public Interest Legal Found., Inc. v. Bellows,* 588 F. Supp. 3d 124, 133 (D. Me. 2022); *Project Vote/Voting for Am., Inc. v. Long,* 682 F.3d 331, 336 (4th Cir. 2012); *Public Interest Legal Found. v. Matthews,* 589 F. Supp. 3d 932, 941 (C.D. Ill. 2022); *Judicial Watch, Inc. v. Lamone,* 399 F. Supp. 3d 425, 438-42 (D. Md. 2019); *True the Vote v. Hosemann,* 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014); *Voter Reference Found., LLC v. Torrez,* No. CIV 22-0222 JB/KK, 2024 U.S. Dist. LEXIS 58803, at *439 (D.N.M. Mar. 29, 2024).

Defendant has agreed that Plaintiff is entitled to Defendant's statewide voter list. Email from Def.'s counsel to Pl.'s counsel (Nov. 22, 2024, 13:27 EST) (true copy attached hereto as Exhibit 3). Accordingly, there is no dispute as to this issue.

### 2.    Plaintiff Is Entitled To The ERIC Member Data Files

ERIC describes itself as "a nonprofit, nonpartisan membership organization created by and comprised of state election officials from around the United States." https://ericstates.org/about/ (last visited Nov. 25, 2024). ERIC claims to be "the most effective tool available to help election officials maintain more accurate voter rolls and detect possible illegal voting." *Id.* ERIC's goal is to "improv[e] the accuracy of state voter registration data." Compl., Ex. D at 10, ECF No. 1-4.

Defendant was required to sign a contract with ERIC pursuant to G.L. ch. 51, § 47C. Defendant signed that contract on June 15, 2022, and the contract had an effective date of June 16, 2022. Compl., Ex. D at 7-18, ECF No. 1-4. That contract obligated the Commonwealth to send "Member Data" files to ERIC at least every sixty days. *Id.* at 7-8. "Member Data" is

---

[1] Section 8(i)(1) is codified at 52 U.S.C. § 20507(i)(1).

defined as "data related to [the Commonwealth's] voter files and motor vehicle records." *Id.* at

7. Member Data includes:

> (1) all inactive and active voter files (excluding those records that are confidential or protected from disclosure by law), including those fields identified in Exhibit B, and (2) all licensing or identification records contained in the motor vehicles database (excluding those fields unrelated to voter eligibility … ), including those fields identified in Exhibit B.

*Id.* at 8.

Exhibit B to the contract lists the following fields: all name fields; all address fields; driver's license or state identification number; last four digits of Social Security number; date of birth; activity dates as defined by the ERIC Board of Directors; current record status; affirmative documentation of citizenship; the title/type of affirmative documentation of citizenship presented; phone number; e-mail address or other electronic contact method. *Id.* at 16.

According to its contract, ERIC will provide the Commonwealth with regular (at least monthly) reports to assist the Commonwealth in maintaining its voter registration list. *Id.* at 7. These reports include:

> 1. Cross-State Movers Report: Identifies voters who appear to have moved from one ERIC member to another using voter registration data and MVD data.
> 2. In-State Updates Report: Identifies voters who appear to have moved within the jurisdiction, or who recently updated their contact information, using voter registration and MVD data.
> 3. Duplicate Report: Identifies voters with duplicate registrations in the same state using voter registration data and MVD data.
> 4. Deceased Report: Identifies voters who have died using voter registration data and Social Security death data known as the Limited Access Death Master File and MVD data.

https://ericstates.org/faq/ (last visited Nov. 25, 2024).

ERIC requires that each member state "act on these reports in a manner consistent with applicable state and federal law, including taking action to remove ineligible voters." *Id.*

Indeed, ERIC requires that within ninety days of receiving an ERIC report identifying voters with inaccurate or outdated records, the Commonwealth must contact at least ninety-five percent of those voters to update or inactivate those voters' records.  Compl., Ex. D at 11, ¶ 5(b), ECF No. 1-4.

ERIC's public pronouncements make clear that it provides a program to help its member states maintain, and improve the accuracy of, statewide voter lists.  ERIC's statutorily mandated contract with the Commonwealth sets forth required recurring activities consistent with that goal.  Statutorily mandated periodic maintenance of voter rolls "is—under any definition—a "program[ or] activit[y] conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  *Torrez,* 2024 U.S. Dist. LEXIS 58803, at *435 (alterations in original).

Here, those activities include the Commonwealth's obligation to send Member Data files to ERIC at regular intervals.  Those Member Data files, therefore, are "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters … ."  52 U.S.C. § 20507(i)(1).  Defendant must produce those records as the NVRA Public Disclosure Provision mandates.  *Id.*

Notwithstanding the Commonwealth's executed contract with ERIC and the presence of the Commonwealth on ERIC's list of member states, Defendant claims that the Commonwealth does not participate in the ERIC program.  Email from Def.'s counsel to Pl.'s counsel (Nov. 22, 2024, 13:27 EST) (true copy attached hereto as Exhibit 3).  Consequently, Defendant claims that it does not have the requested Member Data files.  *Id.*

Plaintiff cannot verify that claim without discovery.  But assuming, *arguendo*, that the claim is currently accurate, it has no bearing on the future availability of the Member Data files.  Plaintiff, therefore, respectfully requests that the Court (1) conclude that the NVRA Public

Disclosure Provision mandates production of the Member Data files, and (2) order Defendant to produce the Member Data files to the extent that they exist, now or in the future.

B.     Defendant Is Required To Produce The Voter Records

Defendant contends that it is not "specifically" obligated to provide the records that the NVRA Public Disclosure Provision encompasses. *Id.*  Presumably, it is Defendant's position that Plaintiff must request and obtain voter rolls from each of the 351 cities and towns in the Commonwealth and—somehow—compile these separate municipal rolls into a complete and accurate statewide voter list.

Defendant's interpretation of the NVRA Public Disclosure Provision is unsupported by law, inherently unworkable, and inconsistent with its initial willingness to provide the records.

1.     Defendant Is The Chief Election Official Who Is Responsible For Complying With The NVRA Public Disclosure Provision

The NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this Act." 52 U.S.C. § 20509.  Defendant is the Commonwealth's chief election official for the purpose of complying with the NVRA. 1993 Mass. ALS 475; 1993 Mass. Ch. 475; 1993 Mass. S.B. 1824 ("The state secretary is hereby designated as the chief state election official for the purposes of 42 USC 1973gg-9 of the National Voter Registration Act of 1993.").[2]  This designation of Defendant as the Commonwealth's chief election official applies uniformly throughout the NVRA. *United States v. Nippon Paper Indus. Co.,* 109 F.3d 1, 4 (1st Cir. 1997) ("It is a fundamental interpretive principle that identical words or terms used in different parts of the same act are intended to have the same meaning."). *See also Webster v. Board of Appeals of*

---

[2] 42 U.S.C. § 1973gg-9 was transferred to 52 U.S.C. § 20510 ("Civil enforcement and private right of action").

*Reading*, 349 Mass. 17, 19, 206 N.E.2d 92, 93 (1965) ("Sound principles of statutory construction dictate that interpretation of provisions having identical language be uniform.").

Defendant is responsible for the Commonwealth's compliance with the HAVA as well. 52 U.S.C. § 21003(e) ("In this subtitle [52 U.S.C. § 21001 *et seq.*], the 'chief State election official' of a State is the individual designated by the State under section 10 of the National Voter Registration Act of 1993 (42 U.S.C. § 1973gg-8 [52 U.S.C. § 20509]) to be responsible for coordination of the State's responsibilities under such Act."). This includes maintaining a central computerized statewide voter registration list that is "administered at the State level." 52 U.S.C. § 21083; G.L. ch. 51, § 47C.

As discussed *supra* § IV-A, the Public Disclosure Provision encompasses the statewide voter list and the ERIC Member Data files. The Public Disclosure Provision mandates that "[e]ach <u>State</u> shall … make available for public inspection" these materials. 52 U.S.C. § 20507(i)(1) (emphasis added). In other words, the Public Disclosure Provision places responsibility for the mandated disclosure at the <u>state</u> level on a <u>statewide</u> actor. It does not place responsibility for the disclosure on an official of a political subdivision of the state.[3]

This interpretation is consistent with other provisions of the NVRA in which the "chief State election official"—not a lower level agent—is tasked with complying with the statute. *See, e.g.,* 52 U.S.C. § 20505(b) (development of mail voter registration application forms); 52 U.S.C. § 20507(g) (determining voting eligibility of convicted felons); 52 U.S.C. § 20508(a) (development of regulations for mail voter registration application forms).

The plain and unambiguous language of the NVRA Public Disclosure Provision is conclusive. Interpreting it consistently with the HAVA leads to the proper statutory

---

[3] *See Bellows*, 92 F.4th at 53 (noting that the capitalized form of the word "State" refers to the state itself).

construction.  *United States v. Letter from Alexander Hamilton to the Marquis de Lafayette,* 498 F. Supp. 3d 158, 165 (D. Mass. 2020).

Defendant, as the Commonwealth's chief election official, is responsible for complying with all of the NVRA, including the Public Disclosure Provision.  Any other interpretation defies the canons of statutory construction.

> 2.      Defendant's Alternative is Inconsistent, Unworkable, And Contrary To Law

Instead of accepting Plaintiff's single request to the Commonwealth's chief election official pursuant to the NVRA Public Disclosure Provision, Defendant apparently proposes that Plaintiff submit individual requests to each of the 351 cities and towns in the Commonwealth. Defendant's proposal is not credible.

As an initial matter, Defendant's refusal to provide the Voter Records under the NVRA is inconsistent with its initial willingness to provide that information to Plaintiff.

Plaintiff originally requested the Voter Records from Defendant on December 3, 2023. Compl., Ex. A, ECF No. 1-1.  Defendant did not deny that request.  *Id.*, Ex. B, ECF No. 1-2.  In its response, Defendant did not instruct Plaintiff to submit individual requests to each city and town in the Commonwealth.  *Id.*  Defendant's only condition on producing the Voter Records was that Plaintiff execute a licensing agreement, which Defendant never provided to Plaintiff. *Id.*, Exs. B, C, ECF Nos. 1-2, 1-3.

Defendant, therefore, was willing to produce the requested Voter Records to Plaintiff directly.  Defendant did not require Plaintiff to engage in the complicated and time consuming effort of submitting individual requests to each city and town.  There is no basis for Defendant to impose that requirement now.

Defendant apparently proposes that Plaintiff make individual requests under the NVRA Public Disclosure Provision to each of the 351 cities and towns in the Commonwealth. But it is unclear whether the municipal recipients of these requests—the city and town clerks—would be obligated under the NVRA Public Disclosure Provision to respond to Plaintiff. As discussed *supra* § IV-B-1, Defendant, as the Commonwealth's chief election official, is responsible for complying with the NVRA. That responsibility does not extend to the municipal recipients. Consequently, the individual requests for voter data would likely need to be based on another statute with which the municipal recipients must comply; for example, the Commonwealth's Public Records Law, G.L. ch. 66, §§ 1-21.

But the Commonwealth's Public Records Law includes statutory exemptions from disclosure. G.L. ch. 4, § 7(26). One such exemption is "[t]he names and addresses contained in said central registry [of voters] shall not be a matter of public record … ." G.L. ch. 51, § 47C. Notwithstanding the exceptions[4] from the exemption, this restriction on the complete release of voter information is contrary to the "sweeping language that Congress adopted" mandating the production of "all records" pursuant to the NVRA's Public Disclosure Provision. *Bellows*, 92 F.4th at 48. Furthermore, as discussed *infra* § IV-C, the NVRA preempts this restriction.

The Voter Records sought include the Member Data files that Defendant is obligated to send to ERIC at regular intervals. The municipal recipients of the proposed 351 individual requests are not a party to the Commonwealth's contract with ERIC. They are not responsible for the Member Data files. It is unlikely that they even possess Member Data files.

---

[4] "[The voter names and addresses] … shall be available to state party committees, statewide candidate committees, state ballot question committees, the jury commissioner, adjutant general and any other individual, agency or entity that the state secretary shall designate by regulation consistent with the purposes of this section … ." G.L. ch. 51, § 47C. It is unclear whether the state ballot question committee exception might favor Plaintiff.

Consequently, the municipal responses to the proposed individual requests would be incomplete because they would lack the Member Data files to which Plaintiff is entitled.

Defendant's proposal unnecessarily complicates the procedure of obtaining the Voter Records. As described below, it introduces middlemen—the city and town clerks—into the process.

Typically, a municipal clerk receiving a request for voter data will access the VRIS that Defendant maintains and order a data "extract" that includes the information sought. The VRIS would provide the extract to the clerk who would then send it to Plaintiff. Thus, the clerks would function only as conduits—middlemen—in the entire process; sending and receiving data to and from Defendant. Adding to this inefficiency is that this scenario would occur 351 times—once for each individual request—every time someone requests statewide voter data. This is not a workable solution.

In addition to its inefficiency, Defendant's proposal will not result in obtaining uniform and accurate voter data. As described in the Declaration of Edith Risser, Plaintiff has a long history of making individual requests for voter data to municipal clerks. E. Risser Decl. ¶¶ 5-6 (true copy attached hereto as Exhibit 4). This is a time consuming process to complete for requests sent to each of the 351 cities and towns in the Commonwealth. *Id.* ¶ 7. Plaintiff never received a response to many of those requests. *Id.* ¶ 8. When Plaintiff did receive a response, in many instances it was untimely; for example, arriving approximately three months after the request.[5]

---

[5] For requests made pursuant to the Commonwealth's Public Records Law, a response is due within ten business days of the request, which may be extended by an additional fifteen business days in certain circumstances. G.L. ch. 66, § 10(b)(vi).

The responses have been inconsistent as well. For example, in their responses some municipal clerks have inexplicably redacted or encrypted public information. *Id.* ¶ 10. Still others have changed the data Defendant has provided them into unworkable formats. *Id.* These changes might raise issues concerning the authenticity and/or accuracy of the responses. *Id.*

Compiling these responses into a single, readable, and usable document is virtually impossible to accomplish within any reasonable period. *Id.* ¶ 11. Furthermore, Plaintiff typically must alter the responses when attempting to compile them, again potentially raising issues of authenticity and/or accuracy. *Id.*

Potentially the most significant problem with this individual request procedure is that the data obtained from each municipality do not all originate from the same point in time. *Id.* ¶ 12. Upon receipt of a request for voter data, each municipal clerk should enter that request into Defendant's VRIS. The date and time of that entry into the VRIS will be different for each clerk, depending on the date and time the clerk receives the request and other duties occupying the clerk. Consequently, the VRIS will be generating multiple data extracts on various dates and times for the clerks to supply to the requestor.

This prevents Plaintiff from obtaining a single snapshot in time of the statewide voter list. Because changes to voter information in the Commonwealth's Central Registry might occur in the intervals between the generation of the multiple data extracts, those extracts might contain erroneous or inconsistent information. For example, consider a voter who moves from Town A to Town B and changes his voting address accordingly. An extract generated from Town A before the move and an extract generated from Town B after the move likely will list the same voter registered in both towns. That inaccuracy, and other similar inaccuracies, will frustrate Plaintiff's complete and proper analysis of the Voter Records.

Defendant's proposal would require Plaintiff to make hundreds of requests each time it wants to examine the Voter Records. Plaintiff's analyses of the Voter Records are part of an ongoing process. It requires that Voter Records be obtained several times throughout any given year to monitor changes and trends. Consequently, those hundreds of requests would quickly balloon into thousands and significantly burden the municipal clerks.

Forcing Plaintiff to make potentially thousands of requests when Defendant can easily produce the requested Voter Records is unreasonable. As one court noted in a similar situation, "neither the NVRA, the Court, nor common sense can abide such a purposeless obstruction." *Lamone,* 399 F. Supp. 3d at 441.

    C.    <u>The NVRA Preempts All State Law That Restricts Unfettered Access to The Voter Records</u>

Courts have uniformly concluded that the NVRA preempts a state's restrictions on a recipient's use and publication of voter information obtained pursuant to the Public Disclosure Provision. For example, the First Circuit concluded that the NVRA preempted Maine's ban on the sale or transfer of the voter information. *Bellows*, 92 F.4th at 53-54. The *Bellows* court struck down Maine's prohibition on publication of the voter information as well. *Id.* at 54-56. It reasoned that the prohibition "create[d] an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as stated in 52 U.S.C. § 20501(b)(1)-(4)." *Id.* at 55.

Defendant's similar restrictions on the dissemination and use of the Voter Records as set forth in G.L. ch. 51, § 47C cannot stand in view of the NVRA.

Furthermore, the restrictions set forth in Defendant's licensing agreement are preempted as well. As discussed *supra* § II ¶ 2, at Defendant's request Plaintiff sought—but never received—the licensing agreement. However, through independent means, Plaintiff has obtained a copy of what appears to be the licensing agreement for 2024 (true copy attached as Exhibit 5).

That licensing agreement restricts production of the voter information only to a party who certifies "that they represent a statewide candidate committee, state party committee or other political committee actively seeking nomination or election or a statewide ballot question committee for or against a question to appear at the next statewide election … ." Ex. 5 at 1. This duplicates the language in G.L. ch. 51, § 47C. The licensing agreement limits the dissemination of the voter information to the licensee and its agents and employees. Ex. 5 ¶ V. These provisions represent an impermissible restriction on the distribution of voter information in defiance of the NVRA.

The licensing agreement states that it is non-transferable. Ex. 5 ¶ II. The *Bellows* court determined that the NVRA preempted that restriction. *Bellows*, 92 F.4th at 53-54.

The licensing agreement prohibits use of the voter information in a manner that "is contrary or inconsistent with the intent of MGL Chapter 51, § 47C or any other applicable statutes pertaining to the election and voter information or registration laws of the Commonwealth of Massachusetts." Ex. 5 ¶ II. This provision is unclear as to what Defendant means by "intent." Also, it is impermissibly vague as to the identity of the "other applicable statutes." The NVRA does not permit such restrictions and preempts this provision.

Defendant's attempts to prevent access to and widespread use of the Voter Records are inconsistent with the NVRA's objectives of protecting the integrity of the electoral process and ensuring that accurate and current voter registration rolls are maintained. 52 U.S.C. § 20501(b). Defendant's licensing agreement is an affront to Congress' intent in enacting the NVRA and it, and Defendant's other restrictions, are wholly preempted.

## V.     CONCLUSION

For the reasons set forth above, Plaintiff submits that summary judgment in its favor is

appropriate and warranted, and respectfully urges the Court to rule accordingly.

Respectfully submitted,

Dated: November 29, 2024                    /s/ Brian M. Gaff
                                            Brian M. Gaff (BBO No. 642297)
                                            215 South Broadway, Suite 308
                                            Salem, NH  03079-3374
                                            857-719-0100
                                            781-581-9134 (fax)
                                            bgaff@lawbmg.com

                                            *Attorney for The Committee for Massachusetts*
                                            *Voter Identification Ballot Question.*

### CERTIFICATE OF SERVICE PURSUANT TO LOCAL RULE 5.2

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 29, 2024.

                                            /s/ Brian M. Gaff
                                            Brian M. Gaff (BBO No. 642297)