UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE COMMITTEE FOR MASSACHUSETTS VOTER IDENTIFICATION BALLOT QUESTION,<br><br>                            Plaintiff,<br><br>v.<br><br>HON. WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth,<br><br>                            Defendant. | CIVIL ACTION<br>NO. 1:24-cv-12029-NMG |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant Hon. William Francis Galvin, in his official capacity as Secretary of the Commonwealth, responds to Plaintiff's Statement of Undisputed Facts, and sets forth the undisputed facts material to his cross-motion for summary judgment.

**DEFENDANT'S RESPONSES TO PLAINTIFF'S UNDISPUTED FACTS**

Defendant objects to the Plaintiff's statement of undisputed material facts pursuant to Fed. R. Civ. P. 56(c)(2) as none are supported by citations to admissible evidence. Many cite to documents or information that are not admissible evidence, and some contain no citation at all, in contravention of Fed. R. Civ. P. 56(c)(1)(a). Plaintiff's unsupported facts should be stricken and the motion denied on the basis of that noncompliance.

Subject to and without waiver of the foregoing objections, Defendant responds to the Plaintiff's statement of facts as follows:

1

1. Plaintiff requested the Voter Records from Defendant on December 3, 2023. Compl., Ex. D at 3, ECF No. 1-4.

RESPONSE: Undisputed.

2. Defendant conditioned the production of Voter Records upon the prior execution of a licensing agreement. *Id.* at 4. Defendant did not provide the licensing agreement notwithstanding Plaintiff's multiple requests for that document. *Id.* at 5.

RESPONSE: Disputed. The Secretary's office initially responded to Plaintiff's request by informing the Plaintiff that while a statewide list of registered voters was generally exempt from disclosure by statute, as a ballot question committee, they could receive it upon execution of a licensing agreement. However, the Secretary's office subsequently realized that the Plaintiff was not a statewide ballot question committee for or against a question to appear at the next statewide election, and therefore was ineligible to receive the statewide list, so there was no need to provide the licensing agreement. *Affidavit of Michelle K. Tassinari* (hereinafter "Tassinari Aff."), ¶¶ 13-14.

3. Plaintiff sent Defendant a Notice Letter dated April 2, 2024 pursuant to 52 U.S.C. § 20510 alleging violation of the NVRA. *Id.* at 1-18.

RESPONSE: Undisputed.

4. Defendant received Plaintiff's Notice Letter on April 3, 2024. Compl., Ex. E, ECF No. 1-5. Defendant did not respond to the Notice Letter or, pursuant to 52 U.S.C. § 20510(b)(2), cure its violation of the NVRA within ninety days.

RESPONSE: The factual allegations that Defendant received Plaintiff's Notice Letter and did not respond are undisputed. The legal conclusion that Defendant is or was violating the NVRA and failed to cure that violation is disputed. 52 U.S.C. § 20510(b)(2).

5. Pursuant to the Help America Vote Act ("HAVA"), 52 U.S.C. §§ 20901-21145, Defendant "shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State …" 52 U.S.C. § 21083.

RESPONSE: Defendant objects insofar as this is a recitation of the law and not a statement of fact. Subject to and notwithstanding that objection, Defendant does not dispute the accuracy of the quoted statutory language.

6. Pursuant to the requirements of the HAVA, Defendant maintains a single, uniform, official, centralized, interactive computerized statewide voter registration list in the VRIS. G.L. ch. 51, § 47C; 950 CMR § 58.

RESPONSE: Undisputed that the Defendant maintains a single, uniform, official, centralized computerized statewide voter registration database in VRIS, and that VRIS satisfies the requirements of HAVA. However, VRIS was created prior to the passage of HAVA and serves purposes other than those set forth in the HAVA requirements. *Tassinari Aff.*, ¶¶ 2-5, 6.

7. Defendant provides secure access to the VRIS to authorized users in each city and town in the Commonwealth to create, modify, and delete resident, family and voter data in the VRIS statewide database only as to their own community. VRIS Resident/Voter Module, 6 (true copy attached hereto as Exhibit 2); Tassinari Memo, 1.

RESPONSE: Undisputed.

8. To maintain the statewide voter registration list, Defendant is required to share voter registration data with ERIC as set forth in an agreement (contract) between Defendant

and ERIC. G.L. ch. 51, § 47C. Defendant signed the contract with ERIC on June 15, 2022, which had an effective date of June 16, 2022. Compl., Ex. D at 7-18, ECF No. 1-4.

RESPONSE: Disputed. Pursuant to Section 2a of the membership agreement with ERIC, the member and ERIC must agree to a "Certification Date" that obligates the member to both supply data to ERIC and then receive data back from ERIC. The SOC and ERIC have not agreed on a Certification Date at this time, so the data-sharing requirements have not been triggered. *Tassinari Aff.*, ¶ 16. Defendant further disputes that there is any state or federal law that requires the Defendant to use ERIC to maintain the statewide voter registration list.

9. The Commonwealth is a member of ERIC:



https://ericstates.org/about/ (last visited Nov. 25, 2024) (emphasis added).

RESPONSE: Undisputed.

10. Pursuant to Defendant's contract with ERIC, the Commonwealth must send data to ERIC at least every sixty days. The data comprise information related to the Commonwealth's voter files and motor vehicle records. That information includes all inactive and active voter files (excluding those records that are confidential or protected from disclosure by law) and all licensing or identification records

contained in the Commonwealth's motor vehicles database (excluding those fields unrelated to voter eligibility). Compl., Ex. D at 7-8, ECF No. 1-4.

RESPONSE: Disputed. Pursuant to Section 2a of the membership agreement with ERIC, the member and ERIC must agree to a "Certification Date" that obligates the member to both supply data to ERIC and then receive data back from ERIC. The SOC and ERIC have not agreed on a Certification Date at this time, so the data-sharing requirements have not been triggered. *Tassinari Aff.*, ¶ 16.

11. Data sent to ERIC include at least the following: all name fields; all address fields; driver's license or state identification number; last four digits of Social Security number; date of birth; activity dates as defined by the ERIC Board of Directors; current record status; affirmative documentation of citizenship; the title/type of affirmative documentation of citizenship presented; phone number; e-mail address or other electronic contact method. Id. at 16.

RESPONSE: Undisputed that the ERIC membership agreement requires this after the member and ERIC agree to a certification date. However, Massachusetts is not currently required to submit these data because it has not agreed to a certification date with ERIC. *Tassinari Aff.*, ¶ 16.

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS MATERIAL TO HIS CROSS-MOTION FOR SUMMARY JUDGMENT**

1.  The Secretary's office hosts a database of registered voters in Massachusetts known as the Voter Registration Information System (VRIS). VRIS was first developed in 1995 after passage of the National Voter Registration Act, to provide the necessary technology for local election officials to maintain and update voter registration records and information as required under the NVRA. *Tassinari Aff.*, ¶ 2.

2.  Prior to the creation of VRIS, each city and town in Massachusetts maintained their own lists of registered voters and residents, with some having local databases while others maintained paper lists.  At that time, local election officials would provide copies of their lists in response to public records requests, including mailing labels, and could charge fees for producing such records.  Under the provisions of the 2005 version of the Code of Massachusetts Regulations, 950 CMR 32.06(6), local election officials could charge a fee of no more than one cent per name, but could charge between $90.00 and $750.00 for computer tapes and could charge a fee of no more than two cents ($0.02) per mailing label, provided that a minimum fee of no more than fifty dollars ($50.00) could be assessed. For paper copies of the voter lists, they could charge no more than twenty cents ($0.20) per page for photocopies, no more than twenty-five cents ($0.25) per page for copies of public records maintained on microfilm or microfiche and no more than fifty cents ($0.50) per page for printout copies of computer records. Local election officials were also able to charge for search and segregation time in responding to requests for copies of the voter lists. *Tassinari Aff.*, ¶ 3.

3.  Because the NVRA required local election officials to maintain additional data relative to voter registration, VRIS was created to assist local election officials in complying with these requirements and to ensure consistency among municipal records. However, local

election officials wanted to retain control over their data as well as the right to collect any fees for production of such data. *Tassinari Aff.*, ¶ 4.

4. As such, under the provisions of General Laws chapter 51, section 47C, this Office maintains the VRIS database itself, but local election officials remain responsible for receiving voter registration forms and entering and updating voter data. Additionally, only certain entities are eligible to receive statewide data and all others have to submit requests locally, enabling local election officials to collect and benefit from any fees for requests for records. *Tassinari Aff.*, ¶ 5.

5. Section 47C of chapter 51 specifically provides that the names and addresses in the database shall not be a matter of public record from the Secretary's office. However, that section contains limited exceptions that allow the Secretary's office to make the data available to state party committees, statewide candidate committees, state ballot question committees, the jury commissioner, adjutant general and any other individual, agency or entity that the state Secretary shall designate by regulation consistent with the purposes of this section, at a fair and reasonable cost not to exceed the cost of printing or preparing computer readable documents. When providing data to qualified entities, the Secretary's office requires the entity to sign a licensing agreement that limits use and distribution of the data. The licensing agreement requires the recipient of the data to certify that they meet the statutory qualifications to receive the statewide list because they represent a statewide candidate committee, state party committee or other political committee actively seeking nomination or election or a statewide ballot question committee for or against a question to appear at the next statewide election. *Tassinari Aff.*, ¶ 6.

6. The Help America Vote Act (HAVA) required each state to create a statewide database of registered voters no later than January 1, 2004. Massachusetts complies with this

requirement through VRIS.

    7.    Under state law, local election officials are solely responsible for registering voters, updating voter information and deleting voters. Some examples of responsibilities of local election officials are as follows:

- Massachusetts General Laws chapter 51, section 36 provides that affidavits of voter registration must be sent to local election officials.

- Massachusetts General Laws chapter 51, section 42H requires local election officials to receive completed voter registration affidavits from agencies, from individuals and organizations conducting voter registration, via the mail and via an online portal and by hand-delivery. Upon receipt of each completed affidavit, the local election officials must certify receipt thereof and shall notify the registrant of the disposition of the affidavit and thereafter add the registrant's name, address and effective date of registration to the annual register of voters.

- Massachusetts General Laws chapter 51, section 46 requires local election officials, upon receipt of a completed voter registration affidavit, to add the registrant's name to the voter list and maintain the affidavit of voter registration.

- Massachusetts General Laws chapter 51, section 2 requires local election officials to update the names of voters.

- Massachusetts General Laws chapter 51, section 3 requires local election officials to update the addresses of voters.

- Massachusetts General Laws chapter 51, section 37 requires local election officials to prepare lists of qualified voters.

- Massachusetts General Laws chapter 51, section 37A requires local election

- officials to place certain voters on the inactive list.

- Massachusetts General Laws chapter 51, section 41 requires local election officials to preserve all documentation relative to voter registration for a specified period.

*Tassinari Aff.*, ¶ 8.

8.    Pursuant to Massachusetts General Laws chapter 51, section 55, the voter lists prepared by local election officials must be made available for public inspection and a printed copy must be made available at no cost to all duly organized political committees. *Tassinari Aff.*, ¶ 9.

9.    In accordance with the provisions of Massachusetts General Laws chapter 51, section 36, the Secretary's office prepares voter registration forms for agencies, local election officials and the public. *Tassinari Aff.*, ¶ 10.

10.    In December 2023, the Secretary's office received a public records request from Joanne Miksis seeking names, mailing addresses, dates of birth, voter identification numbers, registration date, party affiliation, ward and precinct number and voter status for all persons listed in the statewide database as well as "all Member Data files" sent from the Commonwealth of Massachusetts to the Electronic Registration Information Center (ERIC). In her email, Ms. Miksis identified herself as representing the Committee for Massachusetts Voter Identification Ballot Question. *Tassinari Aff.*, ¶ 11.

11.    In response to the records request, Debra O'Malley, the Elections Division Records Access Officer, informed Ms. Miksis that the voter data was exempt from disclosure by the Secretary by statute but that a ballot question committee was eligible to receive the data upon execution of a licensing agreement. She further responded that there were no records responsive

to the request for "Member Data files" sent to ERIC. *Tassinari Aff.*, ¶ 12.

12.     The Secretary's office later realized in early 2024 that the Committee would not qualify to receive the data from this Office as the ballot question they proposed failed to qualify for the 2024 State Election, so they were not a statewide ballot question committee for or against a question to appear at the next statewide election. *Tassinari Aff.*, ¶ 13.

13.     Although they were ineligible to receive the data from the Secretary's office, they remained eligible and able to request the data from each of the cities and towns in Massachusetts. As noted above, voter data held by local election officials is public and there is no restriction on use or distribution of the data once obtained. *Tassinari Aff.*, ¶ 14.

14.     In the past, the Secretary's office has assisted requestors seeking data from local election officials by providing the requestors with email addresses for local election officials as well as sending broadcast emails to local election officials clarifying the data being requested and providing technical instruction on how to provide the data. Through counsel, they offered to provide the same assistance to the Committee. *Tassinari Aff.*, ¶ 15.

15.     The Secretary's office does not have member data files that were sent to ERIC as they have not agreed to a "Certification Date" with ERIC.  Part of the membership agreement with ERIC requires that this Office provide certain voter data as well as driver license data maintained by the Registry of Motor Vehicles, but only after an agreed upon "Certification Date." A true and accurate copy of the Secretary's membership agreement with ERIC is attached to the Tassinari Affidavit as Exhibit 1; the relevant provision is section 2a of the agreement, on pp. 13-14. Once that data is sent to ERIC, reports will be returned that require further action, including identifying potential duplicate voters and voters who may have moved or otherwise be ineligible. VRIS, the Massachusetts statewide database, was first created in 1995 and the

Secretary's office is in the process of developing a new database. Given the structure and technology of the current database, significant resources would be necessary to make the changes necessary to process any returned records. As such, the Secretary's office determined to defer agreeing to a "Certification Date" until the new database is available, which has the functionality being built into it. While the Secretary's office had expected the new database to be available sooner, the project has been delayed with an expected go live date of summer 2025. *Tassinari Aff.*, ¶ 16.

        Respectfully submitted,

        HON. WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth,

        By his attorney,

        ANDREA JOY CAMPBELL
        ATTORNEY GENERAL

        */s/ Phoebe Fischer-Groban*
        Anne Sterman, BBO No. 650426
        Phoebe Fischer-Groban, BBO No. 687068
        Assistant Attorneys General
        Government Bureau
        One Ashburton Place
        Boston, Massachusetts 02108
        (617) 963-2589
        Anne.sterman@mass.gov
        phoebe.fischer-groban@mass.gov

Dated: January 7, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 7, 2025.

                                                                */s/ Phoebe Fischer-Groban*
                                                                Phoebe Fischer-Groban
                                                                Assistant Attorney General