United States District Court
District of Massachusetts

```
                              )
Committee for Massachusetts Voter )
Identification Ballot Question,   )
                                  )
          Plaintiff,              )
                                  )         Civil Action No.
          v.                      )         24-12029-NMG
                                  )
William Francis Galvin et al.,    )
                                  )
          Defendants.             )
                                  )
```

## MEMORANDUM & ORDER

GORTON, J.

Plaintiff, the Committee for Massachusetts Voter Identification Ballot Question ("plaintiff"), alleges that defendant, William F. Galvin, Secretary of the Commonwealth of Massachusetts ("defendant"), has failed to comply with certain requirements of the National Voter Registration Act ("NVRA"). Both parties now move for summary judgment. For the reasons set forth below, plaintiff's motion for summary judgment will be denied and defendant's motion summary judgment will be allowed.

## I. Background

In 1993, Congress enacted the NVRA to establish procedures that would, among other things, preserve the "integrity of the electoral process" by ensuring that states and local governments maintain "accurate and current" voter records. 52 U.S.C.

- 1 -

§20501(b)(3)-(4).  In carrying out those directives, the NVRA

requires that

> [e]ach State maintain . . . [and] make available for public
> inspection . . . all records concerning . . . the accuracy
> and currency of official lists of eligible voters.

52 U.S.C. §20507(i); see Pub. Int. Legal Found., Inc. v.

Bellows, 94 F.4th 36, 47 (1st Cir. 2024).

The NVRA further requires that each State designate an

officer or employee to act as the "chief State election

official" who is responsible for coordinating that State's

responsibilities under, and compliance with, the NVRA. 52 U.S.C.

§20509.  In Massachusetts, that individual is defendant, the

Secretary of the Commonwealth.  As part of his role as chief

election official, defendant maintains a statewide voter

registration list, in addition to voter records maintained by

local municipalities, using the Voter Registration Information

System ("VRIS") that Massachusetts adopted following the

enactment of the NVRA. M.G.L. c. 51, §47C.

In December, 2023, plaintiff, a registered political

committee, requested a copy of the VRIS records from defendant.

Two weeks later, defendant responded that he would provide the

statewide VRIS list to ballot committees that sign a licensing

agreement but determined that plaintiff is not, in fact, a

ballot question committee because the ballot question plaintiff

had proposed failed to qualify for inclusion on the ballot of

the most recent state election.[1]  Plaintiff made three further
attempts to obtain the requested information but allegedly
received no response.  It also concedes that the requested
"member data files" that are to be transmitted by defendant to
the Electronic Registration Information Center cannot be
produced because they do not yet exist.

In April, 2024, plaintiff asserted that defendant 1) was in
violation of §20507(i) of the NVRA and 2) had 90 days to cure
his violation by permitting plaintiff to inspect the statewide
voter records.  Defendant denied plaintiff's request and
allegedly informed plaintiff that it could obtain the records
from local election officials but not on a statewide basis.

Plaintiff subsequently filed a single-count complaint in
this Court to compel defendant's compliance with the NVRA.
According to plaintiff, defendant violated the NVRA, 52 U.S.C.
§20507(i), by failing to provide the member data files, thus
entitling plaintiff to declaratory and injunctive relief.  Both
parties have since filed cross-motions for summary judgment.

## II. Legal Standard

The role of summary judgment is "to pierce the pleadings
and to assess the proof in order to see whether there is a

---

[1] Although "state ballot question committees" are entitled to voter
registration lists under M.G.L. c. 51, §47C, plaintiff's complaint does not
assert such entitlement and, therefore, the Court will not address that issue
further.

genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party satisfies that burden, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and, therefore, that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

## III. **Analysis**

Both plaintiff and defendant argue, respectively, that summary judgment is warranted in their favor for three separate reasons, all of which depend upon their contrary interpretations of the word "State" under the NVRA's requirement that "each

- 4 -

State" must make its records "available for public inspection."
52 U.S.C. §20507(i).

## A. Obligations of the Chief State Election Official

Plaintiff first maintains that the word "State" under
§20507(i) specifically obligates defendant, as chief State
election official, to provide plaintiff with the records it
seeks.  Defendant concedes plaintiff is entitled to the records
but suggests that, because §20507(i) obligates only the "State"
and not the chief election official in particular, he is not
responsible for producing the records.

Neither the text of the NVRA nor First Circuit case law
offers guidance on the meaning of "State" as plaintiff perceives
it.  The NVRA defines "State" to mean "a State of the United
States and the District of Columbia," 52 U.S.C. §20502(4), but
does not indicate whether Congress intended, by imposing an
obligation upon a State, to place any specific obligation on the
chief election official.  The First Circuit Court of Appeals
("the First Circuit"), in turn, has interpreted the meaning of
"State" under §20507(i) in at least two instances, neither of
which addressed whether it" implicates the chief State election
official. See Colon-Marrero v. Conty-Perez, 703 F.3d 134, 138
(1st Cir. 2012) (holding that that "State" under §20507(i)
excludes the territories of the United States, such as Puerto

Rico); Pub. Int. Legal Found., Inc., 94 F.4th at 47 (concluding that "State" under §20507(i) referred to each State individually and thus one State could not rely on another State's voter registration records to comply with the NVRA). This Court will therefore interpret the disputed meaning of "State" as an issue of first impression.

When interpreting statutory language, this Court begins with the statute's text and assumes that the language at issue "carries its plain and ordinary meaning." City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020). The inquiry does not, however, end there. The Court may also consider the "structure and context of the broader statutory scheme" of which the language is a part, United States v. Seward, 967 F.3d 57, 66 (1st Cir. 2020), and, based upon long-accepted canons of statutory construction, the Court may account for the meaning of a term by reference to other words in the same statute, to words used in similar statutes and to judicial constructions given to that term, Russell Motor Car Co. v. United States, 261 U.S. 514, 519 (1923); Erlenbaugh v. United States, 409 U.S. 239, 243 (1972). The context, purpose or inter-relationship of the statute cannot be used, however, to impute a more nuanced definition than the one Congress enacted. See Poe v. Seaborn, 282 U.S. 101, 109 (1930).

Beginning with the text, §20507(i) provides only that the "State" is required to provide the information plaintiff seeks but not that the "chief State election official" alone must do so. To the contrary, Congress has been explicit when it wants to place an obligation on a chief State election official. Many subsections of the NVRA set forth duties of the "chief State election official" in particular, including duties to ensure mail voter registration forms are available, to determine how a felony might affect the voting rights of the felon and to serve as the designed recipient of written notice for alleged violations of the statute. See, e.g., 52 U.S.C. §§20505(b), 20507(g), 20510(b)(1). If Congress had intended, as plaintiff suggests, for the disclosure obligation to borne solely by chief election officials, it could easily have done so as it did in other subsections of the NVRA. It did not, however, and, in the absence of a clearer directive from Congress, this Court will refine the definition of "State" as enacted in §§20507(i) and 20502(4).

Applying a broader reading of the term "State" finds support in other sections of the NVRA and in the text of related statutory schemes as well. Section 20570 of the NVRA, for example, expressly distinguishes between a "State" and the "State election official." See, e.g., 52 U.S.C. §20507(a)(2) ("[E]ach State shall . . . require the appropriate State

election official . . . ."). Likewise, in another section of
the NVRA, 52 U.S.C. §20508, and in a similar statutory scheme,
the Help America Vote Act, 52 U.S.C. §20901(a), Congress drew a
comparable distinction between those obligations that adhere to
a "State" as a whole rather than to its "chief State election
official." That distinction is dispositive. Because §20507(i)
refers to the "State," rather than the "chief State election
official," the Court is satisfied that the duty to disclose
voter registration records plaintiff seeks under the NVRA is
imposed upon the State as a whole, not the defendant.[2]

**B. Delegation by the Chief State Election Official**

Plaintiff further contends that the system currently in
place in Massachusetts, under which the Commonwealth delegates
the disclosure of voter registration lists to local entities, is
impractical, unworkable and contrary to requirements of the
NVRA. According to defendant, neither the NVRA nor cases
interpreting it proscribe the delegation of record production.

The First Circuit has yet to opine on the extent to which
the disclosure requirement under §20507(i) permits delegation.
Cf. Pub. Int. Legal Found., Inc., 94 F.4th at 47 (indicating
that "State" referred to each State individually and forbidding

_____

[2] Defendant directs the Court to the legislative history of the NVRA which
supports their interpretation but, because it is the text of the NVRA, not
its legislative history, that Congress enacted, the Court declines to
consider it. Accord United States v. Turkette, 452 U.S. 576, 580 (1981).

delegation to <u>other</u> states).  A number of other federal courts
have addressed challenges, however, involving a state that
delegated its recordkeeping responsibilities under the NVRA to
local entities, such as counties. <u>See, e.g.</u>, <u>Steven Wayne Fish</u>
<u>v. Kobach</u>, No. 16-2105-JAR, 2016 WL 6125029, at *2 (D. Kan. Oct.
20, 2016); <u>Bellitto</u> v. <u>Snipes</u>, 221 F. Supp. 3d 1354, 1361 (S.D.
Fla. 2016); <u>Voter Intergrity Project NC, Inc.</u> v. <u>Wake Cnty. Bd.</u>
<u>of Elections</u>, 301 F. Supp. 3d 612, 616 (E.D.N.C. 2017); <u>Judicial</u>
<u>Watch, Inc.</u> v. <u>Lamone</u>, 399 F. Supp. 3d 425, 440-41 (D. Md.
2019); <u>Bellitto</u> v. <u>Snipes</u>, 935 F.3d 1192, 1196 (11th Cir. 2019).
This Court is unaware of any case holding that such a delegation
is invalid. <u>Cf</u>. <u>Pub. Int. Legal Found., Inc.</u> v. <u>Nago</u>, No. CV 23-
00399 LEK-WRP, 2024 WL 3233994, at *5 (D. Haw. June 28, 2024)
(declining to address a challenge to the delegation of record-
keeping authority to local governments for lack of standing).

That the NVRA permits delegation to local governments finds
further support in the judicially-accepted meaning of the word
"State."  Although the NVRA defines "State" only as "a State of
the United States," 52 U.S.C. §20502(4), and in other sections
distinguishes a "State" from a "local government," <u>e.g.</u> 52
U.S.C. §20506, that definition of "State" is broad enough to
encompass local actors.  It is a well-accepted principal of
local government law that a state's political subdivisions,
i.e., counties, towns and cities, are not distinct entities from

a State. See City of Trenton v. New Jersey, 262 U.S. 182, 187 (1923). Rather, they are subordinate entities created by a State whose powers and privileges are subject to the State's control. See id. As such, an interpretation of "State" that embraces not only statewide governmental actors but also the political subdivisions of each State does not conflict with the statutory language of the NVRA.

Throughout the NVRA, Congress also expressly contemplated a degree of coordination between a State, its chief election officials and its local governments, offering a further indication that Congress intended local involvement in carrying out the NVRA's objectives. From the outset, the NVRA indicates that the chief election official is responsible for "coordination of State responsibilities under this Act." 52 U.S.C. §20509. That coordination includes, among other things, a requirement that the chief election official provide notice to officials in local jurisdictions. Id. §20507(g)(5). The NVRA also imposes obligations not only on each State at a statewide level but also on its local governments. 52 U.S.C. §20501(a)(2). By suggesting State and local coordination and considering both the State and its local governments responsible for

implementation, Congress deliberately did not foreclose delegation to local entities.[3]

Ultimately, the responsibility of a chief election official for coordinating each State's obligations under the NVRA means that official can be sued if a State, either as a whole or through its local subdivisions, fails to comply with the requirements of the NVRA. See Harkless v. Brunner, 545 F.3d 445 (6th Cir. 2008) (rejecting standing challenge and concluding that chief election official was the proper defendant when a State fails to comply with the NVRA); Charles H. Wesley Educ. Found. v. Cox, 408 F.3d 1349, 1354 (11th Cir. 2005) (same). Nothing in the text of the NVRA however, forbids delegating of those responsibilities to local authorities. See True the Vote v. Hosemann, 43 F. Supp. 3d 693, 713 (S.D. Miss. 2014) (recognizing that States remain obligated for failures to disclose even if "a State delegates record . . . disclosure duties to local governments" (emphasis added)).

Even if the Massachusetts delegation system is unwieldy an unnecessarily de-centralized, the NVRA does not require that it be otherwise.  As the Eleventh Circuit explained in in Greater

---

[3] To the extent plaintiff relies on the Help America Vote Act ("HAVA"), 52 U.S.C. §20901 et seq., to support a contrary reading of the NVRA, such an argument is unavailing because HAVA does not expressly address delegation and, although it amended certain portions of the NVRA by reference, the record disclosure provision of NVRA was "not among them." Greater Birmingham Ministries v. Sec'y of State for Ala., 105 F.4th 1324 (11th Cir. 2024).

Birmingham Ministries v. Sec'y of State for Ala., 105 F.4th
1324, 1334 (11th Cir. 2024), the NVRA does not mandate that
voter registration records be easily accessible, nor can a court
compel a specific disclosure method simply because doing so may
appear more practical or efficient.

This Court further recognizes that, in the context of other
federal statutes, some courts have interpretated "State" only to
include statewide, not local, government authorities, unless the
statute's definitions dictate otherwise. See, e.g., United
States v. Pauler, 857 F.3d 1073, 1077 (10th Cir. 2017)
(concluding that "State" did not include political subdivisions
where statutory definition did not say so); Town of Bedford v.
Raytheon Co., 755 F. Supp. 469, 475 (D. Mass. 1991) (same), and
City of Philadelphia v. Stepan Chem. Co., 713 F. Supp. 1484,
1488 (E.D. Pa. 1989) (same); see also, e.g., 38 U.S.C. §4303(4)
(defining "State" to include "agencies and political
subdivisions thereof").

Other courts have, however, criticized such a reading of
"State" as too narrow. See, e.g., City of Toledo v. Beazer
Materials & Servs., Inc., 833 F. Supp. 646, 652 (N.D. Ohio
1993); Mayor & Bd. of Aldermen of Town of Boonton v. Drew Chem.
Corp., 621 F. Supp. 663, 667 (D.N.J. 1985).  For the reasons
stated above, this Court concludes that a broader reading of
"State" in context of the NVRA is the better interpretation.

Accordingly, the Court finds that the delegation of registration recordkeeping to Massachusetts municipalities is not inconsistent with the NVRA and, therefore, plaintiff's challenge is unavailing.

### C. Preemption of Massachusetts Statutes by the NVRA

Plaintiff finally suggests that certain Massachusetts statutes are preempted by the NVRA and that no state statute authorizes delegation to local entities. Because defendant did not raise a separate claim of preemption in its complaint, however, and refers to it only in its prayer for relief, defendant contends that the Court need not address it and that, in any event, the statutes and policies are not preempted.

A claim that a state statute is preempted by federal law presents a distinct cause of action. Shaw v. Delta Air Lines, 463 U.S. 85, 96 & n.14 (1983). As such, a plaintiff must state that cause of action as a substantive allegation in its complaint, not in a prayer for relief alone, see 6 J. Moore, W. Taggart & J. Wicker. Moore's Federal Practice ¶ 54.60 at 1212-14 (2d ed. 1983) ("[The] prayer for relief . . . constitutes no part of the pleader's cause of action."), nor can a plaintiff rely on pleadings at the summary judgment stage to raise a claim it neglected to include in its initial complaint, see Dooling v. James B. Nutter & Co., 139 F. Supp. 3d 505, 514 (D. Mass. 2015).

Plaintiff here seeks a declaration that the NVRA "preempts . . . any [Massachusetts] statute, code, regulation, practice, and/or policy" preventing plaintiff's access to the records it seeks.  Plaintiff does so, however, only in its prayer for relief.  It did not state a separate claim for preemption, cf. Shaw, 463 U.S. at 96 & n.14, nor does it specify the kind of preemption it seeks or the specific policy that forms the basis of such preemption.  Because plaintiff addresses preemption in earnest only through its summary judgment pleadings, cf. Dooling, 139 F. Supp. 3d at 514, it has failed to allege a viable preemption claim.  Furthermore, because there is no dispute that 1) local officials in Massachusetts are obligated to produce voter registration records, 2) such disclosure by local officials is consistent with the requirements of the NVRA and 3) that obligation is not imposed upon the Massachusetts Secretary of the Commonwealth, the motion for summary judgment of defendant will be allowed and the motion for summary judgment of plaintiff will be denied.

## ORDER

For the foregoing reasons, the motion for summary judgment of plaintiff, the Committee for Massachusetts Voter Identification Ballot Question, (Docket No. 18) is **DENIED** and the motion for summary judgment of defendant, William F. Galvin, Secretary of the Commonwealth, (Docket No. 22) is **ALLOWED**.

**So ordered.**

Nathaniel M. Gorton
Senior United States District Judge

Dated:  July 2 , 2025

- 15 -